IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEJANIQUE STROZIER,

     Plaintiff,

v.

AMAZON.COM SERVICES LLC,

     Defendant.

CIVIL ACTION FILE NO.

1:23-cv-85-MLB-JKL

## FINAL REPORT AND RECOMMENDATION

This is an employment case arising under the anti-retaliation provision of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-3(a). The case is before the Court on Defendant Amazon.com Services, LLC's motion for summary judgment. [Doc. 55.] For the reasons below, it is **RECOMMENDED** that the motion be **GRANTED**.

## I.    SUMMARY JUDGMENT STANDARD

A court should grant summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The movant bears the initial burden of showing that it is entitled to summary judgment. *Id.* ("The court shall grant summary judgment if

the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  If that burden is met, the burden shifts to the non-moving party, who is required to "to go beyond the pleadings" and to present competent evidence in the form of affidavits, answers to interrogatories, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted); *see* Fed. R. Civ. P. 56(c).

When the party responding to a statement has neither refuted nor stated valid objections to the material facts in the statement, those facts are deemed admitted by operation of law.  LR 56.1B(2), NDGa.; *Reese v. Herbert*, 527 F.3d 1253, 1267-69 (11th Cir. 2008).  When a party denies a statement of fact (in whole or in part), the Court has reviewed the record to determine whether it is disputed and, if so, whether any dispute is material.  The Court has also excluded assertions of fact by either party that are immaterial or presented as arguments or legal conclusions, as well as assertions of fact unsupported by a citation to evidence in the record, stated as a legal conclusion, or asserted only in the party's brief and not the statement of facts.  *See* LR 56.1B(1), NDGa.; *see also Chapman v. AI Transp.*, 229 F.3d 1012, 1051 n.34 (11th Cir. 2000) (en banc) (subjective perceptions, conclusory allegations, or allegations that are otherwise unsupported by record evidence do not

2

create genuine issues of material fact to withstand summary judgment); *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (same).

## II.    BACKGROUND

### A.    Preliminary Matters

In setting out the facts of this case, the Court has considered Defendant's Statement of Material Facts ("DSMF" [Doc. 55-2]), Plaintiff's Response to Defendant's Statement of Material Facts ("R-DSMF" [Doc. 58-1]), Plaintiff's Statement of Additional Facts ("PSAF" [Doc. 58-2]), and Defendant's Response to Plaintiff's Statement of Additional Facts, ("R-PSAF" [Doc. 59-1]).  The Court has also conducted its own review of the record.[1]  *See* Fed. R. Civ. P. 56(c)(3).  Each supported fact will be deemed admitted unless properly disputed by the responding

---

[1] Plaintiff urges the Court not to consider facts that Defendant included only in its brief and not in its statement of undisputed facts.  [Doc. 58 at 3-7.]  Local Rule 56.1(B)(1)(d) requires the movant to set out all material facts in a separate statement of material facts and warns that the Court will not consider facts set out only in the movant's brief.  For the most part, Defendant's statement of facts sets out the facts material to this case, and the facts that are included only in its brief provide context.  But even if Defendant should have included more facts in its statement of undisputed material facts, "this Court has 'broad discretion' to overlook noncompliance with Local Rule 56.1 and to 'base its decision on *all* of the evidentiary materials in the record on summary judgment.'"  *Johnson v. Hinsley*, No. 2:09-CV-180-RWS, 2011 WL 4553143, at *3 (N.D. Ga. Aug. 30, 2011) (quoting *Reese v. Herbert*, 527 F.3d 1253, 1270 (11th Cir. 2008)), *report and recommendation adopted*, 2011 WL 4553131 (N.D. Ga. Sept. 29, 2011).  This is precisely what this Court will do here.

party. *See* LR 56.1(B)(2), (3), NDGa. Citations in this report and recommendation that reference only paragraph numbers from a party's statement of facts or the response thereto refer to statements that are not disputed. When a statement or part of it is properly disputed, the Court has reviewed the material evidence and factual inferences in the light most favorable to the nonmoving party and, as appropriate, cites directly to the evidence supporting the Court's factual recitation.[2]

### B.    Facts

In July 2021, Plaintiff began working as a Fulfillment Center Associate at Defendant's Moreland, Georgia warehouse. (DSMF ¶ 1.) When she was hired, she acknowledged that she had access to and was responsible for reading, understanding, and complying with Defendant's workplace policies, including its "Owner's Manual and Guide to Employment" (the "Owner's Manual"). (DSMF ¶¶ 2, 3, 4.) Relevant to the present dispute is a section of the Owner's Manual entitled "Standards of Conduct," which sets out a nonexhaustive list of workplace infractions—known as "Category 1" infractions due their seriousness—that could result in the termination of employment. [Doc. 55-6 at 5-6.] The infractions

---

[2] Complete, paginated copies of Plaintiff's, Cierra Bland's, and Renecas Doxie's deposition transcripts and exhibits are found at docket entries 61, 62, and 63, respectively.

include gross misconduct, sexual or other unlawful or unwelcome harassment, and failure to fully cooperate with company investigations. [*Id.*]

In the early morning hours of August 10, 2021, while Plaintiff was working the night shift, her coworker Travis Thornton came to her work location. (Pl. Decl. ¶¶ 2, 4.) He told her he had been looking for her and reached down to initiate a hug. (*Id.* ¶¶ 8-9.) Plaintiff turned sideways, and as he hugged her, he forcefully grabbed her buttocks. (*Id.* ¶¶ 10-11.) Plaintiff pushed him away. (*Id.* ¶ 12.) Plaintiff began to cry; in response, Thornton told her that they were both grown people. (*Id.* ¶¶ 13-14.)

Plaintiff immediately reported the incident to her three supervisors, Shaq Boywer, "Pete," and "Dominique," all of whom advised her to contact human resources ("HR"). (Pl. Dep. [Doc. 61-1] at 9-10, 63; Pl. Decl. ¶ 15.) Boywer and Dominque then accompanied Plaintiff to the HR office in a nearby building. (Pl. Decl. ¶ 16.) Meanwhile, Plaintiff's supervisors attempted to locate Thornton. (*Id.* ¶ 18.)

Once they arrived at the HR office, Cierra Bland, a HR employee, interviewed Plaintiff for about an hour. (Pl. Decl. ¶¶ 20, 23.) Senior HR assistant Sidney Horton also attended the interview. (Dep. of Cierra Bland [Doc. 62-1] at 50.) Bland asked Plaintiff if she had ever touched Thornton; Plaintiff responded

she did not recall touching him.  (Pl. Decl. ¶¶ 24-25.)  After the interview, Plaintiff prepared a written statement reporting that Thornton approached her pretending to give her a side hug, but then grabbed her buttocks.  [Doc. 55-9 at 2.]

Bland and an operations manager interviewed Thornton separately.  (Bland Dep. at 59, 61, 64.)  Thornton admitted that he had touched Plaintiff's buttocks, but added that Plaintiff had touched him earlier.  (*Id.* at 62.)  Thornton then prepared a written statement, relating that over the past "few weeks" a "girl" (he stated he did not know Plaintiff's name) had repeatedly come up to him and touched his arms and chest and that when he "finally gave her a hug, [his] hands might have touch[ed] her lower back to[o] low."  [Doc. 55-12 at 2.]

After concluding the interviews, Bland sent an email at 6:57 a.m. on August 10, 2021, to HR Manager Renecas Doxie and Loss Prevention team members Clinton Bailey and Notley Reavis, summarizing the interviews and recommending that Thornton be suspended pending further investigation.  [Doc. 55-15 at 6.]  (*See also* Bland Dep. at 80; Dep. of Renecas Doxie [Doc. 63-1] at 24.)  She wrote:

> AA[3] Dejanique Strozier . . . reported to Area Manager Shaq Boywer[] that AA Travis Thornton . . . grabbed her butt while working in the MODS (P-1).[4]  AA Strozier reported that she was

---

3 "AA" stands for "Amazon associate."  (Bland Dep. at 3.)

4 "MODS (P-1)" refers to a specific location within the warehouse.  (Bland Dep. at 81.)

picking on the first floor when she observed AA Thornton approach her from the steps.  AA Thornton attempted to hug AA Strozier and she went in for a "side hug" when AA Thornton grabbed her butt. In STU[5] with AA Thornton, he admitted to touching AA Stroizer's butt stating that "she touches me on my chest and arms when she sees me."  And [he] stated "how can she touch me and I cannot touch her."  AA Thornton has not submitted or reported this information to any leaders.  AA Thornton did not know AA Strozier's name when asked and provided information on another associate when asked about any additional communication.

[Doc. 55-15 at 6.]

Doxie responded to Bland that she should follow up with Plaintiff "and see if she admits to physically touching [Thornton] as well."  [Doc. 55-15 at 5.]  Doxie also wrote, "I believe you know the next steps with [Thornton] (termination).  If she admits, process her as well."  [*Id.*]

The next day, August 11, 2021, Bland interviewed employee Phillip Scott, who claimed that he had witnessed Plaintiff touch and interact with Thornton. (Bland Dep. at 76, 78.)  After the interview, Scott prepared the following statement:

I saw a lady with orange hair grab Travis [Thornton] during clock out time and rub him earlier that night she was calling him to come in one of the rows near the balcony on the 2nd floor I walked up a little bit so I couldn't see so I ask what she wanted and he said she tried to make him hug her and he said these females CRAZY[.]

---

5 "STU" means "seek to understand"—corporate lingo for "interview." (Bland Dep. at 82.)

[Doc. 55-14 at 2.]  It is undisputed that Plaintiff's hair was dyed orange at the time. (Pl. Dep. at 59.)

Bland reviewed video footage from an onsite security camera maintained by Defendant's Loss Prevention team.  (Bland Dep. at 71-72.)  According to Bland, the video showed Plaintiff approach Thornton and touch his arm and chest while he was looking away.  (*Id.* at 102-03.)  Doxie also viewed the video.  (Doxie Dep. at 51.)  He recalled seeing Plaintiff walk past Thornton, who was not paying attention, and then "reach[] across and kind of dr[a]g her hand across his chest." (*Id.* at 52.)  Defendant did not preserve the video, but Bland did capture a still image from it showing Plaintiff touching Thornton while Thornton was looking away:



(DSMF ¶¶ 18-19.)  Though Bland believed that the image showed Plaintiff touching Thornton without his knowledge, she could not say whether Plaintiff's touch depicted in the image was unwelcome or unwanted, and she conceded that the touching was not romantic.  (Bland Dep. at 95-96.)

8

On August 12, 2021, while Plaintiff was again working the overnight shift, Boywer (one of her supervisors) instructed her to report to Bland's office. (Pl. Decl. ¶¶ 26-27.) The meeting began with Bland asking why Plaintiff had lied to her. (*Id.* ¶ 29.) Plaintiff was confused and asked Bland to explain. (*Id.* ¶ 30.) Bland told her that video showed Plaintiff touching Thornton on his arms and chest, and asked Plaintiff if she had done those things. (*Id.* ¶¶ 31-32.) Plaintiff replied that she had touched Thornton's arm, but did not recall touching his chest in a "romantic way." (*Id.* ¶ 34.) At the end of the meeting, which lasted about 15 minutes, (*id.* ¶ 28), Bland told Plaintiff that she was suspended (*id.* ¶ 38). After the meeting, at Bland's request, Plaintiff prepared a statement writing, "I've touched [Thornton's] arm but I do not recall touching his chest as a romantic way." (*Id.* ¶¶ 37, 39.)

According to Plaintiff, she never lied to Bland. (Pl. Decl. ¶ 40.) She insists that at the initial meeting with Bland on August 10, she "honestly" reported that she did not recall touching Thornton and that at the August 12 follow-up, she "honestly" reported that she recalled touching Thornton's arm but did not recall touching his chest. (*Id.* ¶¶ 41-42.) She also contends that she was not aware of a company policy that prohibited touching another employee (other than the sexual harassment policy), that no one ever told her that there was a policy about touching

another employee (again, other than the sexual harassment policy), and that no one told her that "touching another employee in an inoffensive or non-threatening manner was considered inappropriate behavior or that touching amounted to gross misconduct." (*Id.* ¶¶ 43-45.) She also now denies ever touching Thornton in an inappropriate, sexual, or romantic way; grabbing him; touching him without his awareness; or dragging her hand across his body. (*Id.* ¶¶ 46-50.)

After completing Plaintiff's second interview, Bland emailed Doxie and others at 5:52 a.m. on August 12, 2021, with an update concerning the investigation:

> AA Strozier denied touching AA Thornton when follow up STU was completed. Today an associate, AA Phillip Scott, stepped forward as a witness to AA Thornton's claim that AA Strozier touches his arms and chest. AA Strozier during the interview reported that she does not initiate contact with AA Thornton and that she only hugs him from the side after he initiates it. She denied ever touching him on his arm or chest when the follow up STU was completed on Tuesday August 10, 2021.
>
> On Wednesday, August 11, 2021, AA Scott reported that he has witnessed AA Strozier touch AA Thornton on his arm and chest before. He stated that he has observed AA Strozier initiate communication and contact with AA Thornton. AA Scott indicated that it was most recent as Monday August 8, he observed AA Strozier initiate physical contact with AA Thornton twice during the shift. At 5:00 am when they were ending shift. I was able to capture video footage (screen shots below). I completed a follow up STU with AA Strozier tonight with Gary as a witness. I informed her again of AA Thornton's claims and asked if she recalls touching his arms, chest or grabbing him. AA Strozier continued to deny the

claim.   I then informed her that I have video footage of her
g[r]abbing him and I asked her if she recalls rubbing his chest, she
continued to deny it and then stated that she did not recall and that
if she did it was not in a romantic manner.

I informed AA Strozier that due to the nature of the allegations that
she will be suspended pending completion of the investigation.

[Doc. 55-15 at 2.]  Bland included the screenshot from the video she watched that

purportedly  shows  Plaintiff  touching  Thornton  without  his  knowledge,

corroborating Scott's report, at least in part.  [*Id.* at 4-5.]  (*See* Bland Dep. at 95.)

A little less than an hour later, at 6:40 a.m., Bland sent Doxie a message

using Chime, Defendant's internal instant messaging platform, in which she stated

that she was "able to confirm that the female AA touched that other associate" and

that she would notify Plaintiff that her employment would be terminated as well.[6]

[Doc. 58-6 at 2.]

Then, at around 7:29 a.m. on August 12, 2021, Bland received an email in

which Thornton reported to HR that Plaintiff "grabbed [his] arm and chest." (Bland

Dep. at 117-18.)  Bland did nothing further to investigate Thornton's allegations,

---

[6] Plaintiff asserts that this Chime communication occurred before Bland
began the second interview because the communication is time-stamped 3:40 a.m.
[*See* Doc. 58 at 13; *see also* Doc. 58-6 at 2.]  The Chime communications produced
in this case are denoted in Pacific time; thus, the communication in fact occurred
at 6:40 a.m., after Plaintiff's second interview.  (*See* Decl. of Jacob Dean [Doc. 59-
2] ¶¶ 3-5.)  This makes sense, especially because in that same communication,
Bland referred to her already sent 5:52 a.m. email.

however, because it was duplicative of information that had been conveyed to Bland. (*Id.* at 118.)

The next day, August 13, at 8:17 p.m., Bland wrote in an email to Doxie and others that she agreed with terminating the employment of both Thornton and Plaintiff for these reasons:

> Thornton - Inappropriate behavior - AA Stroizer [sic] stated that it was unwanted and that she felt violated. AA Thornton stated that since AA Stroizer [sic] would touch him (chest/shoulders) he was under the impression that the physical contact was a reciprocation of her advances. He stated it was not his intention to violate her by touching her butt. Since she denied it and that this was the only instance of unwanted interaction that she reported and it was not a pattern of behaviors from him.
>
> AA Stroizer [sic]- inappropriate behavior and failing to cooperate with an investigation by denying allegations of touching AA Thornton.

[Doc. 55-10 at 2.]  Around three hours later, at 11:25 p.m., Bland emailed Doxie and others, largely reiterating the reasons why Thornton and Plaintiff would be terminated:

> AA Thornton stated that since AA Strozier would touch him (chest/arms) he was under the impression that the physical contact was a reciprocation of her advances. He stated it was not his intention to violate her by touching her butt. He never mentioned that he felt violated or that her advances were unwanted. He was more concerned that he thought he was reciprocating her advances more so than feeling uncomfortable about her randomly touching him. **AA Strozier** will be termed for inappropriate behavior and

12

failing to cooperate with an investigation by denying allegations of touching AA Thornton.

[Doc. 58-10 at 2.]

Defendant terminated Plaintiff's employment effective August 17, 2021. [Doc. 55-17 at 2 (letter confirming termination of employment).]  According to Bland, Plaintiff was terminated due to "gross misconduct," a category I offense under the Owner's Manual Standard of Conduct, because she had "touch[ed] someone inappropriately and provid[ed a] false statement in an investigation." (Bland Dep. at 139.)

Further discussion of background facts and evidence will be included as necessary to the analysis below.

### C.    Procedural Posture

On January 6, 2023, Plaintiff filed her complaint, asserting a single claim of retaliatory termination in violation of Title VII.  [Doc. 1.]  Following discovery, Defendant moved for summary judgment [Doc. 55], Plaintiff responded in opposition [Doc. 58], and Defendant filed a reply [Doc. 59].  The motion is now ripe for resolution.

## III.   DISCUSSION

Title VII makes it unlawful for an employer to retaliate against an employee who opposes discrimination.  42 U.S.C. § 2000e-3(a).  Where, as here, a plaintiff

relies on circumstantial evidence to support a claim of unlawful retaliation under Title VII, courts apply the familiar three-part *McDonnell Douglas* burden shifting framework. *See Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020). First, the plaintiff must make out a prima facie case of retaliation, showing that (1) she engaged in statutorily protected expression; (2) she suffered an adverse employment action; and (3) there is some causal relationship between the two events. *Id.* "[V]ery close temporal proximity between a protected activity and an adverse action can create an inference of causation." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1309 (11th Cir. 2023) (quotation marks omitted).

If the plaintiff manages to make out a prima facie case, then the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for its actions. *Johnson*, 948 F.3d at 1325. Should the employer make that showing, then the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is a pretext for retaliation. *Id.* To show that an employer's given reasons are pretextual, a plaintiff must show "both that the reason was false, and that retaliation was the real reason." *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1298 (11th Cir. 2021) (quoting *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020)). In other words, "a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Gogel*, 967 F.3d at 1136). A plaintiff must do more than just quarrel with the wisdom of the decision; "[t]o survive summary judgment, the plaintiff must . . . present concrete evidence in the form of specific facts which show that the defendant's proffered reason is mere pretext. Mere conclusory allegations and assertions will not suffice." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). And while "very close" temporal proximity "can be used to prove pretext" (in addition to establishing causation for purposes of the prima facie case), an "intervening discovery of employee misconduct" may also "sever the causal inference created by close temporal proximity." *Berry*, 84 F.4th at 1309. At all times, the plaintiff retains the ultimate burden of persuading the finder of fact that the defendant acted with discriminatory intent. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

### A. Prima Facie Case

Defendant argues that Plaintiff cannot establish the third prong of the prima facie case [*see* Doc 55-1 at 11-14], which requires a plaintiff to "show 'that the

15

protected activity and the adverse action were not wholly unrelated,'"[7] *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999) (internal citations omitted).  In most cases, a plaintiff can meet this prong by showing "[a] 'close temporal proximity' between the protected expression and an adverse action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004).  Here, there is at most a three-day gap between Plaintiff's complaint about Thornton and the decision to terminate her employment.  This is enough to satisfy the causal connection prong. *See McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (five-day gap between engaging in protected activity and adverse action sufficient to establish causation prong); *Donnellon v. Fruehauf Corp.*, 794 F.2d 598, 601 (11th Cir. 1986) (same conclusion regarding one-month gap).

Defendant contends that despite the close temporal proximity between her complaint and the decision to fire her, the causal chain was broken due to the subsequent revelation of her own misconduct (touching Thornton and her lack of candor during the investigation).  [Doc. 55-1 at 11-14.] Defendant also argues that Plaintiff herself conceded that this misconduct was the but-for cause of her

---

[7] The Court's analysis focuses on the causation prong, as Defendant does not challenge on summary judgment that Plaintiff engaged in protected activity or that she suffered an adverse employment action.  [*See* Doc. 55-1.]

16

termination because she admitted at her deposition that, had she not violated Defendant's standards of conduct, she would not have been fired. [*Id.* at 8-9.] The Court cannot agree. In this case, Plaintiff's alleged touching of Thornton was not an intervening act—it occurred ***before*** she engaged in protected activity, and the decisionmakers became aware of it only after she complained.[8] Likewise, Plaintiff's alleged lack of candor during her interview occurred while she was actively engaged in protected activity, thus making that misconduct intertwined with the protected activity itself. Ultimately, because the question at the prima facie case stage of the analysis is merely whether the protected activity and adverse action are "not wholly unrelated," *Clover*, 176 F.3d at 1354, in the Court's view,

---

[8] The two cases on which Defendant primarily relies are distinguishable because in both, the employer was aware of the employee's misconduct before engaging in protected activity. *See Cisero v. ADT LLC of Del.*, No. 1:19-CV-4319-SDG-CMS, 2021 WL 1712206, at *14 (N.D. Ga. Apr. 27, 2021) (finding no causation where employee "had documented ongoing behavior and performance issues that were present both before and after [she] started complaining of discrimination"), *report and recommendation adopted*, 2021 WL 4472977 (N.D. Ga. Sept. 30, 2021); *Kennedy v. Norfolk S. Corp.*, No. 1:10-CV-3427-TCB-RGV, 2012 WL 12985418, at *11 (N.D. Ga. Apr. 13, 2012) (stating that "since the wheels of discipline had already been set in motion when [plaintiff] made her complaint, an inference of causation does not arise simply from the temporal proximity between her complaint and the subsequent adverse action"), *report and recommendation adopted*, 2012 WL 12985419 (N.D. Ga. May 15, 2012). Here, by contrast, Defendant was not aware of any misconduct by Plaintiff prior to her complaint about Thornton's touching.

17

the intervening discovery of Plaintiff's asserted misconduct is better addressed at the pretext stage, as other courts—including the Eleventh Circuit[9]—have done. *See Berry*, 84 F.4th at 1308 (assuming without deciding that plaintiff established a prima facie case of retaliation where defendant uncovered substantial evidence of plaintiff's bullying and misconduct after plaintiff complained of race discrimination); *Gogel*, 967 F.3d at 1135, 1137 n.15 ("Defendant concedes, and we will likewise assume, that Gogel established *a prima facie* case as to her retaliation claim . . . . [as] the protected activity and the adverse action were not wholly unrelated," even though "an intervening event—Kia's discovery of [the plaintiff's purported misconduct]—undermined the significance of any temporal proximity" for pretext purposes) (citing *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277–78 (11th Cir. 2008)); *Gibson v. Wendelta, Inc.*, No. 5:23CV85-TKW-MJF, 2024 WL 1109240, at *6 (N.D. Fla. Mar. 11, 2024) (addressing at pretext stage the

---

[9] Plaintiff cites *Berry* and *Gogel* to argue that an intervening act of misconduct will sever the causal connection between protected activity and an adverse employment action even if it "occurs in 'close temporal proximity' to the protected activity," and, indeed, even if it occurs before protected activity, so long as the employer "learns of the intervening act" after the protected activity takes place. [Doc. 55-1 at 12-13.] However, neither *Berry* nor *Gogle* even addressed the issue of causation for purposes of a prima facie case; rather, both assumed that temporal proximity established causation, and instead focused on the issue only during the courts' pretext analysis. *See Berry*, 84 F.4th at 1308-09; *Gogel*, 967 F.3d at 1135-37. The Court will do the same here.

plaintiff's admission that he would have been fired regardless of whether he complained about race discrimination because he was not bringing in new business); *Feige v. Novitas Sols., Inc.*, No. 3:19-CV-395-MMH-MCR, 2023 WL 34712, at *11 (M.D. Fla. Jan. 4, 2023) (assuming that plaintiff established causation prong despite evidence of plaintiff's intervening violations of company policy and addressing the matter at the pretext stage of the analysis); *Gross-Jones v. Mercy Med.*, 874 F. Supp. 2d 1319, 1345 (S.D. Ala. 2012) (evaluating employee's intervening misconduct at pretext stage of analysis rather than as part of the prima facie case). Accordingly, the Court will assume that the very close temporal proximity—that is, a matter of days—between the protected activity and Plaintiff's discharge is enough to establish the causation prong of the prima facie case, and instead address her alleged misconduct at the pretext stage of the analysis.

### B.    Non-Retaliatory Reason

Because Plaintiff can establish a prima facie case of retaliation, the burden shifts to Defendant to provide a legitimate, non-retaliatory reason for terminating her employment. This burden is slight: the employee meets its burden by articulating a reason that "might legitimately motivate a reasonable employer to terminate an employee." *Berry*, 84 F.4th at 1309. Defendant has done so here—having presented evidence that it fired Plaintiff because she violated Defendant's

19

standards of conduct by inappropriately touching Thornton and by providing a false statement about that conduct.

## C.    Pretext

At the pretext stage, the burden shifts back to plaintiff to "demonstrate that the employer's proffered reason was pretextual by presenting evidence sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018) (internal quotation marks omitted). The Eleventh Circuit has "repeatedly and emphatically held" that an employer may make employment decisions for "a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quotation marks omitted). "[A]n employer's honest belief that the employee violated its policies can constitute a legitimate reason for termination, even if such a belief may have been mistaken or wrong." *Carlisle v. Rhodes & Rhodes Fam. Dentistry*, No. 22-13901, 2024 WL 621421, at *5 (11th Cir. Feb. 14, 2024) (per curiam) (citing *Smith v. PAPP Clinic, P.A.*, 808 F.2d 1449, 1452-53 (11th Cir. 1987)).

20

Citing *Lapham v. Walgreen Co.*, 88 F.4th 879, 894 (11th Cir. 2023),[10] Plaintiff contends that a genuine issue of fact remains as to whether she would have been fired but for her engaging in protected conduct. [Doc. 58 at 10-11.] *Lapham*, a case involving analogous claims of retaliation under the Family and Medical Leave Act and the Florida Whistleblower Acts, explains that "but-for causation is established whenever a particular outcome would not have happened but for the purported cause." *Lapham*, 88 F.4th at 894 (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739 (2020)). Elaborating, the Eleventh Circuit wrote:

> Thus, the but-for test directs [the court] to change one thing at a time and see if the outcome changes. If it does, the isolated factor is a but-for cause. And if it does not, the isolated factor is not a but-for cause, and all of the other factors, taken together, are sufficient. To be clear, single events often have multiple but-for causes, so the but-for standard can be quite sweeping depending on the circumstances.

*Id.* (quotation marks and citations omitted). As the *Lapham* court further explained, at the pretext stage of the analysis, the court must determine whether the plaintiff has produced "sufficient evidence showing that [the defendant's] proffered reasons for her termination were merely pretext for retaliation and that, ***but for the retaliation***, [the employer] would not have fired her." *Id.* (emphasis added).

---

[10] As well as Justice Gorsuch's concurrence in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 143 S. Ct. 2141, 2209 (2023), from which *Lapham* draws.

With these principles in mind, the Court turns to Plaintiff's arguments. She first contends that a jury could find that retaliatory intent was the real reason for her termination because there was a "rush to judgment" with no "broad examination of the context" regarding Plaintiff's touching and misstatements, and thus Defendant applied its employment policies inconsistently. [Doc. 58 at 12.] In support, she relies on Doxie's email to Bland in which he instructed Bland to fire Plaintiff if the investigation confirmed that Plaintiff had touched Thornton. Plaintiff contends that this email shows that she would have been fired regardless of the context in which she touched Thornton, and that a bright-line, touch-and-be-fired rule is inconsistent with Defendant's standard policy of examining the context of a touching before terminating someone's employment. [*Id.*]

The problem with this argument is that the record demonstrates that there was no "rush to judgment," and that despite the foregoing email, Bland and Doxie did consider the context surrounding Plaintiff's touching of Thornton. To recap: after Plaintiff formally complained about Thornton to HR, at the direction of her three supervisors, Bland interviewed her for about an hour, during which time Plaintiff told Bland that she did not recall touching Thornton. But when Bland and another operations manager interviewed Thornton, he informed them that Plaintiff had in fact touched him. Faced with competing stories, Bland presented the

22

information to Doxie and Loss Prevention team members, after which, Doxie concluded (1) that Thornton should be fired for touching Plaintiff, and (2) that if Plaintiff had also touched Thornton, then she too should be fired. Notably, Doxie's recommendation for discharge was conditioned on Plaintiff having touched Thornton and then having been untruthful about it.

After this communication—on which Plaintiff appears to premise her contention that Defendant was prepared to "get rid of her regardless of context" and was uninterested in "truth seeking" [*see* Doc. 58 at 12-13]—Bland in fact continued her investigation and found multiple pieces of evidence that corroborated Thornton's report: (1) video footage showing Plaintiff touching Thornton the day before and (2) Scott's eyewitness account of Plaintiff's interactions with Thornton. When Bland confronted Plaintiff with this information, Plaintiff admitted that she had touched Thornton's arm, but insisted that she did not recall touching his chest or touching him romantically. Based on this evidence and Plaintiff's further admission, Bland and Doxie agreed that Plaintiff had in fact touched Thornton inappropriately—though not necessarily romantically—at the workplace and that she had not been forthright during the investigation.[11] As the foregoing sequence

---

[11] Plaintiff asserts that she can show the investigation was a sham because before Bland completed her second interview of Plaintiff, Bland messaged Doxie

of events demonstrates, in reaching this conclusion, there was no "rush to judgment," and Plaintiff's argument that Defendant's investigative or deliberative speed was indicative of pretext is without merit.

Plaintiff also argues that she can show retaliation was the real reason for her firing because Defendant applied a "phantom work rule proscribing the inoffensive touching of another employee" that was never disclosed to her. [Doc. 58 at 14.] In other words, Plaintiff contends that her touching was so inoffensive that it did not violate any of Defendant's enforced workplace rules.   Again, the evidence contradicts Plaintiff's assertion.   Defendant did not invent a workplace anti-touching rule out of whole cloth.   Rather, the standards of conduct set out in the Owner's Manual—which Plaintiff admits applied to her (*see* DSMF ¶ 2)—are broadly written to cover a wide range of inappropriate workplace conduct.   "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules."   *Langford v. Magnolia*

---

via Chime that she would tell Plaintiff "that she will be termed too." [Doc. 58 at 13 (citing Doc. 58-6 at 2).]  According to Plaintiff, this shows that Bland had already decided that Plaintiff should be fired before interviewing Plaintiff a second time.  But as discussed above, Plaintiff is incorrect about the sequence of events. Bland sent the Chime message ***after*** she interviewed Plaintiff for a second time. Thus, the Chime message in no way suggests that Bland's mind was made up before she interviewed Plaintiff a second time.

*Advanced Materials, Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)).   As discussed above, Bland's investigation showed that Plaintiff had touched Thornton without his permission, and during the investigation, she admitted to doing so (only denying any recollection that the touching was romantic).

Along these lines, Plaintiff contends that a jury could find that Bland did not honestly believe she had violated a workplace rule.   "The inquiry into pretext centers on the employer's beliefs, . . . not on reality as it exists outside of the decision maker's head." *See Alvarez v. Royal Atl. Devs.,* 610 F.3d 1253, 1266 (11th Cir. 2010).  Plaintiff insists that she "did not lie" but rather that she stated only that she could "not recall" touching Thornton as alleged.  [*See*, *e.g.*, Doc. 58 at 16.] Regardless of whether any of Plaintiff's specific statements amounted to a lie, she has not actually addressed the policy violation at issue—namely, that she had failed to cooperate with Bland's investigation when she failed to acknowledge having touched Thornton less than two or three days earlier.  And more to the point, Plaintiff has not put forward any evidence to suggest that Bland did not actually believe that Plaintiff had not cooperated with the investigation when she (Plaintiff) said could not recall touching Thornton, since, as noted, it occurred within days of the investigation.  [*See* Doc. 55-15 at 2 (email discussing video footage of Plaintiff

touching Thornton on August 8, 2021).] While Plaintiff may disagree with Bland and Doxie's conclusions that Plaintiff inappropriately touched Thornton on his chest and arm without his awareness and that she failed to cooperate with the investigation based upon her initial denial and subsequent admission that she had touched Thornton, she has not come forward with evidence to suggest that Bland and Doxie did not honestly believe that Plaintiff did those things, much less point to any similarly situated comparators who were not discharged after touching a coworker and dissembling about the encounter. In the end, Plaintiff simply quarrels with the wisdom of Defendant's decision, which is not enough to show pretext under Eleventh Circuit precedent.

The cases Plaintiff cites in her brief for the proposition that the sincerity of a decisionmaker's held belief is "subject to scrutiny" are not helpful. [*See* Doc. 58 at 19.] *Vessels v. Atlanta Indep. Sch. Sys.*, is distinguishable because the plaintiff there came forward with concrete evidence that suggested the employer's reasons for failing to promote him were pretextual, including: the employer's statements that candidates of a certain race were superior to others; the plaintiff's superior qualifications in comparison with the candidate who was promoted; and the employer's violation of its own clearly established hiring procedures. 408 F.3d 763, 772 (11th Cir. 2005). Meanwhile, in *Cleveland v. Home Shopping Network,*

*Inc.*, the court held that an employer's shifting reasons for why it terminated the plaintiff presented a genuine issue of fact as to pretext.  369 F.3d 1189, 1193-94 (11th Cir. 2004).  But here, Defendant has not proffered inconsistent or shifting reasons for terminating Plaintiff's employment.  Likewise, in each of the trial court decisions cited by Plaintiff, the employee set forth affirmative evidence calling into question the employer's purported justifications.  *See Dickey v. Crawford Cnty. Sch. Dist.*, 928 F. Supp. 2d 1342, 1356-58 (M.D. Ga. 2013) (finding that because the plaintiff had specifically informed the county board that "she did not want to retire," there was sufficient evidence for a reasonable person to conclude that the decisionmakers did not actually believe she wanted to retire); *McMillan v. DeKalb Cnty., Ga.*, 2005 WL 5121850, at *7-8 (N.D. Ga. Dec. 15, 2005) (evidence of racist comments and "very unusual" deviations from the required termination procedures raised a genuine issue of material fact regarding pretext).  Plaintiff has offered no evidence to contest Bland and Doxie's stated belief that Plaintiff touching Thornton, as well as her untruthfulness thereafter, was in violation of Defendant's policies.

Plaintiff also argues that a jury "could" believe that Bland acted out of a "desire to keep peace on the warehouse floor, to get rid of trouble-makers, to dissuade others from disrupting the work of the warehouse with complaints, or just

27

a desire to be done with [Plaintiff] and her complaints." [Doc. 58 at 15-16.] The evidence, however, even when viewed in the light most favorable to Plaintiff, does not support these speculative theories. At summary judgment, a plaintiff must do more than rely on mere speculation and conjecture to create a triable issue of pretext. *See Akridge v. Alfa Ins. Co.*, 93 F.4th 1181, 1196 (11th Cir. 2024) ("Such '[s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.'") (quoting *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005)); *see Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1318 (11th Cir. 2011) ("At the summary judgment stage, such 'evidence,' consisting of one speculative inference heaped upon another, was entirely insufficient.").

Finally, Plaintiff argues by assertion that a jury could conclude that Defendant's reasons are pretext because it "could have," but did not, preserve the video footage that Bland reviewed during the investigation. [Doc. 58 at 14-15.] Plaintiff does not argue that the automated destruction of the video—as part of Defendant's routine data retention practices—amounts to spoliation; and she does not explain how the video footage would have undercut Defendant's stated reasons for terminating her employment. Even crediting Plaintiff's statements about the encounter, she admitted to Bland that she did not recall touching Thornton across

the chest or doing so romantically—in other words, she did not deny to Bland that those things happened, and in fact stated that she could not deny them, as she apparently had no recollection of the incident.  As a result, the lack of video does not call Bland's or Doxie's reasons for terminating Plaintiff's employment into question, much less permit an inference that she was fired in retaliation for complaining about Thornton.

Simply put, Plaintiff has not presented evidence that shows that Defendant's proffered reason for her employment termination is mere pretext.  Accordingly, her Title VII retaliation claim fails.[12]

---

[12] In light of this analysis, the Court does not need to address whether Plaintiff's deposition testimony that she believed that she would not have been fired had she not violated Defendant's policies constitutes an admission that she cannot show a causal connection between her protected activity and termination from employment.  Even so, the Court rejects Plaintiff's argument that it is inadmissible under Federal Rule of Evidence 602—which requires a witness to have personal knowledge of her own testimony—because Plaintiff clearly testified about what she believed.  But her testimony about what she believes, however, is not especially probative of the decisionmakers' intent because, as discussed above, the Court's "inquiry into pretext centers on the employer's beliefs, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside of the decision maker's head." *Alvarez*, 610 F.3d at 1266.

## IV.    CONCLUSION

In conclusion, Plaintiff has not presented sufficient evidence of retaliation to survive summary judgment. Accordingly, it is **RECOMMENDED** that Defendant's motion for summary judgment, [Doc. 55], be **GRANTED**.

As this is a final report and recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

IT IS SO RECOMMENDED this 14th day of May, 2024.

_____

JOHN K. LARKINS III
United States Magistrate Judge