# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

Dejanique Strozier,

           Plaintiff,

                       Case No. 1:23-cv-85-MLB

v.

Amazon.com Services, LLC,

           Defendant.

_____/

## ORDER

This is an employment case. Plaintiff Dejanique Strozier sued Defendant Amazon.com Services, LLC, claiming it illegally retaliated against her by firing her for complaining that a coworker sexually harassed her. (Dkt. 1.) Defendant moved for summary judgment. (Dkt. 55.) Magistrate Judge John K. Larkins, III issued a Final Report and Recommendation ("R&R"), saying the Court should grant Defendant's motion. (Dkt. 64.) Plaintiff objects. (Dkt. 67.) The Court adopts the R&R.

## I.   Background

Plaintiff worked for Defendant as an associate in Defendant's

warehouse.  (Dkt. 58-1 ¶ 1.)  When Defendant hired her, Plaintiff agreed to follow Defendant's workplace policies, including its employee handbook.  (Dkt. 58-1 ¶¶ 2–4.)  The handbook sets out a non-exhaustive list of serious workplace infractions—known as "Category 1" offenses— that might result in termination.  (Dkt. 55-6 at 5–6.)  Those offenses include gross misconduct, sexual or other unlawful or unwelcome harassment, and failure to cooperate fully with company investigations. (*Id.*)

During Plaintiff's shift in the early morning hours of August 10, 2021, her coworker Travis Thornton approached her, saying he had been looking for her.  (Dkt. 59-1 ¶¶ 5, 8.)  When Thornton tried to hug Plaintiff, she turned her body, causing him to hug her from the side.  (Dkt. 59-1 ¶ 9–10.)  Thornton forcibly grabbed Plaintiff's buttocks, and Plaintiff pushed him away.  (Dkt. 59-1 ¶¶ 11–12.)  Plaintiff became upset.  (Dkt. 59-1 ¶ 13.)  She immediately contacted her supervisors and told them what had happened.  (Dkt. 58-3 ¶ 15.)  She then filed a report with HR. (Dkt. 58-3 ¶ 16.)

Cierra Bland (an HR employee) interviewed Plaintiff for about an hour.  (Dkt. 58-3 ¶¶ 20, 23.)  Bland asked Plaintiff if she had ever touched

Thornton, and Plaintiff said she could not recall doing so. (Dkt. 58-3 ¶¶ 24–25.) After the interview, Plaintiff prepared a written statement reporting that Thornton approached her pretending to give her a side hug but then grabbed her buttocks. (Dkt. 55-9 at 2.)

Bland interviewed Thornton separately. (Dkt. 58-1 ¶ 8.) He admitted touching Plaintiff's buttocks but said she had previously touched him while at work. (Dkt. 58-1 ¶ 9.) He prepared a written statement alleging that, in the weeks before the incident, "[Plaintiff] kept coming up to [him] and touching on [his] arms and chest" and that, when he "finally gave her a hug, his hand[s] might have touch[ed] her lower back [too] low." (Dkt. 55-12 at 2.)

After completing the interviews, Bland emailed HR manager Renecas Doxie, summarizing Plaintiff's description of the incident and emphasizing Thornton's contention that Plaintiff had previously touched him on the chest and arms. (Dkt. 55-15 at 6.) She recommended suspending Thornton pending further investigation. (*Id.*) About 10 hours later, Doxie responded that Bland should follow up with Plaintiff to "see if she admits to physically touching [Thornton] as well." (Dkt. 55-15 at 5.) He wrote, "I believe you know the next steps with [Thornton]

(termination).  If she admits, process her as well."  (*Id.*)

The next day, Bland interviewed another employee—Phillip Scott—who said he had seen Plaintiff touch and interact with Thornton.  (Dkt. 62-1 at 76.)[1]  Scott prepared a written statement saying he had seen Plaintiff "grab [Thornton] during clock out time and rub him earlier that night."  (Dkt. 55-14 at 2.)[2]  According to Scott, Plaintiff also called Thornton up to a second-floor balcony where Scott could not see.  (*Id.*)  Scott later asked Thornton what Plaintiff had wanted, and Thornton said she "tried to make him hug her."  (*Id.*)

Bland and Doxie reviewed a security camera video (perhaps from around the time Scott said Plaintiff allegedly touched Thornton).  (Dkt. 62-1 at 71–72.)  Defendant apparently did not preserve the video.  But, according to Bland, the video showed Plaintiff approach Thornton and touch his arm and chest while he was looking away.  (Dkt. 62-1 at 102–103.)  Doxie said the video showed Plaintiff "walk by [Thornton], and he

---

[1] When citing deposition transcripts, the Court references the transcript page number rather than the page number of the CM/ECF system.

[2] Scott's statement refers to "a lady with orange hair."  (Dkt. 55-14 at 2.)  No one disputes Plaintiff had orange hair at the time, and Plaintiff admits Scott was referring to her.  (Dkts. 58-1 ¶ 25; 61-1 at 59.)

wasn't paying attention. She reached across and kind of drug her hand across his chest." (Dkt. 63-1 at 52.) Bland took a still image from the video, which shows Plaintiff touching Thornton while he is looking away:



(Dkt. 58-1 ¶¶ 18–19.) Bland believed the image showed Plaintiff touch Thornton without his knowledge. (Dkt. 62-1 at 95–96.)

The next day (August 12), Bland met with Plaintiff for about 15 minutes. (Dkts. 58-3 ¶ 28; 59-1 ¶ 46.) Bland began by asking Plaintiff why she had lied. (Dkt. 58-3 ¶ 29.) Plaintiff was confused and asked Bland to explain. (Dkt. 58-3 ¶ 30.) Bland told Plaintiff a video showed Plaintiff touching Thornton on his arms and chest. (Dkt. 58-3 ¶ 31–32.)

Bland then asked Plaintiff if she admitted doing that. (*Id.*) Plaintiff said—and wrote in a statement—she had touched Thornton's arm but did not recall touching his chest in a "romantic way." (Dkts. 58-3 ¶ 34; 58-16 at 2.) Bland told Plaintiff she was suspending her. (Dkt. 58-3 ¶ 38.)

Shortly after, Bland emailed Doxie and others an update. (Dkt. 55-15 at 2.) Bland explained that Plaintiff denied touching Thornton during her initial interview; Scott "stepped forward as a witness to . . . Thornton's claim that . . . [Plaintiff] touched his arms and chest"; Scott told her he had seen Plaintiff "initiate communication and contact with . . . Thornton"; Bland was able to secure video of Plaintiff touching Thornton; and Plaintiff continued to deny touching Thornton even though Bland had video of her "g[r]abbing him" and said if she had touched Thornton, it was not in "a romantic manner" (Dkt. 55-15 at 2.) Bland sent Doxie the still image she took from the video. (*Id.*) About an hour later, she sent Doxie a message using Defendant's internal instant message platform saying she was "able to confirm that [Plaintiff] touched the other associate" and that she would notify Plaintiff that Defendant was terminating her employment. (Dkt. 58-6 at 2.)

The next day, Bland sent two emails to Doxie and others saying she

recommended firing Thornton and Plaintiff.  (Dkts. 55-10 at 2; 58-10 at 2.)  She said Defendant should terminate Thornton for "[i]nappropriate behavior" based on his touching Plaintiff, which "was unwanted" and made her feel "violated."  (Dkt. 55-10 at 2.)  She said Defendant should fire Plaintiff for "inappropriate behavior and failing to cooperate with an investigation by denying allegations of touching . . . Thornton."  (*Id.*)  Defendant terminated Plaintiff a few days later.  (Dkt. 55-17 at 2.)  Bland testified Defendant fired Plaintiff for "gross misconduct" under the employee handbook.  (Dkt. 62-1 at 139.)

Plaintiff sued Defendant, claiming retaliation for complaining about Thornton's harassment in violation of Title VII of the Civil Rights Act ("Title VII").  (*Id.*)  Defendant moved for summary judgment.  (Dkt. 55.)  The Magistrate Judge recommended granting Defendant's motion.  (Dkt. 64.)  Plaintiff objects.  (Dkt. 67.)

## II.  Legal Standard

### A.  Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The party

moving for summary judgment bears the initial burden of showing a court, by reference to materials in the record, that there is no genuine dispute as to any material fact. *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). The nonmoving party then has the burden of showing summary judgment is improper by coming forward with "specific facts" demonstrating a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Salinero v. Johnson & Johnson*, 995 F.3d 959, 964 (11th Cir. 2021).

**B.    R&R**

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, Soc. Sec. Admin.*, 825 F. App'x 685, 694 (11th Cir. 2020)[3]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009)

---

[3] The Court recognizes *McCullars* is unpublished and not binding. The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th

("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, Soc. Sec. Admin.*, 654 F. App'x 469, 472 (11th Cir. 2016). Ultimately, whether objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III.  Discussion

Title VII protects an employee from retaliation by her employer

---

Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

because she (a) opposed any practice prohibited by Title VII or (b) participated in any manner in an investigation, proceeding, or hearing under Title VII. *See* 42 U.S.C. § 2000e-3(a); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1174 (11th Cir. 2000). The *McDonnell Douglas* burden-shifting framework governs retaliation claims that—like Plaintiff's claim—are based on circumstantial evidence. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1162–63 (11th Cir. 1993). To establish a prima facie case of retaliation, a plaintiff must show (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal relationship between the two events. *Yelling v. St. Vincent's Health System*, 82 F.4th 1329, 1337 (11th Cir. 2023). If a plaintiff demonstrates a prima facie case of retaliation, the burden shifts to the defendant to show a non-retaliatory reason for the adverse employment action. *Id.* If the defendant meets its burden, "the plaintiff must show that the proffered reasons were pretext and the employer's real reason was retaliation." *Id.*

"[T]o establish pretext . . . a plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its

action that a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (cleaned up). "A reason is not pretext for retaliation unless it is shown both that the reason was false and that retaliation was the real reason." *Id.* (cleaned up). The plaintiff must "provide evidence from which one could reasonably conclude that, but for her alleged protected act, her employer would not have fired her."[4] *Id.* "While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient." *Id.* at 1137 n.15.

Plaintiff raises one claim under Title VII: retaliation for complaining about sexual harassment. (Dkt. 1 ¶¶ 47–55.) Defendant moved for summary judgment, arguing Plaintiff could not show her complaint was the but-for reason for her termination or that Defendant's justification for firing her was pretextual. (Dkt. 55.) The Magistrate

---

[4] The Eleventh Circuit has not "squarely address[ed] whether the but-for test should apply at the prima facie or pretext stage of analysis." *Gogel*, 967 F.3d at 1135 n.13. The court assumed in *Gogel* that "the but-for test is to be applied at the pretext stage of the summary judgment examination." *Id.* So, the Court applies it here.

Judge concluded the temporal proximity between Plaintiff's complaint and termination was enough to establish a question of material fact on causation. (Dkt. 64 at 15–18.) But the Magistrate Judge also found Plaintiff could not prove Defendant's justification for its decision to fire her was pretextual. (Dkt. 64 at 29.)

Plaintiff objects to the findings on pretext. (Dkt. 67 at 2.) Plaintiff specifically says the Magistrate Judge erred by: (1) finding Defendant maintained and properly applied a company policy that proscribed inoffensive touching; (2) ignoring purported inconsistencies in Bland's testimony; (3) finding Plaintiff touched Thornton without his permission; (4) finding Plaintiff failed to cooperate with Bland's investigation; and (5) failing to give proper weight to the close temporal proximity between her complaint and termination. (Dkt. 64 at 2.)

### A.    Company Policy

The Magistrate Judge concluded Defendant's proffered justification for firing Plaintiff was not pretextual because it followed its workplace policies in terminating Plaintiff for inappropriately touching Thornton and lying about it during the investigation. (Dkt. 64 at 24–25.) Plaintiff says the Magistrate Judge erred because Defendant does not have a

workplace policy prohibiting "inoffensive touching." (Dkt. 64 at 14.) Defendant says Plaintiff simply disagrees with its interpretation of its own policies, which cover a broad range of inappropriate workplace conduct—including Plaintiff's touching Thornton without his awareness. (Dkt. 71 at 12–13.)

"An asserted 'work rule' violation may be pretextual when the plaintiff proffers evidence '(1) that she did not violate the cited work rule, or (2) that if she did violate the rule, other employees outside the protected class, who engaged in similar acts, were not similarly treated.'" *Hudson v. Blue Cross Blue Shield of Ala.*, 431 F. App'x 868, 869 (quoting *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1363 (11th Cir. 1999)). Title VII, however, "does not take away an employer's right to interpret its rules as it chooses and to make determinations as it sees fit under those rules." *Langford v. Magnolia Advanced Materials, Inc.*, 709 F. App'x 639, 641 (11th Cir. 2017) (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984)). "Thus, whether an employment decision was prudent or fair is irrelevant." *Hudson*, 431 F. App'x at 869. "[A]n employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable

for discriminatory conduct." *Id.* (internal quotation marks and citation omitted).

Plaintiff's termination letter says Plaintiff "rubbed on . . . another associate's chest and arms while on premise[s]," later "denied the allegations and completed a statement reiterating that [she had] not touched the [associate] in any harassing[] or sexual manner," and that "[w]itness accounts and video footage [were] obtained that substantiated the claim that [Plaintiff] touched the [associate's] arm and chest." (Dkt. 55-18 at 2.) The letter goes on to explain Defendant "does not tolerate inappropriate or offensive conduct, including harassment and/or discriminatory actions or communications," that Plaintiff "failed to meet this expectation," and that this "Gross Misconduct is a Category 1 offense resulting in termination of employment." (*Id.*) Bland also testified she found Plaintiff committed "gross misconduct" by "touching someone inappropriately and providing false statement[s] in an investigation." (Dkt. 62-1 at 139.) Doxie confirmed he approved Plaintiff's termination because she engaged in "gross misconduct" by "touch[ing] [Thornton] without him being aware and then not being truthful during the investigation." (Dkt. 55-7 at 53–54.) In other words, Defendant (through

two employees) found Plaintiff touched Thornton inappropriately when she did so without Thornton's knowledge and that she lied about it during the investigation.

Plaintiff says Defendant's interpretation is suspect given Defendant did not look at the "overall circumstances of the reason why the touch occurred." (Dkt. 67 at 14–15.) Plaintiff's argument fails for three reasons.

First, the record demonstrates Defendant thoroughly examined the circumstances surrounding Plaintiff's decision to touch Thornton. Bland "review[ed] all the evidence that was provided" by interviewing Scott—a witness to Plaintiff's prior touching—and reviewing a video of the incident. (Dkts. 62-1 at 76–77, 94–95, 112.) Doxie also reviewed that video to "confirm [him]self" that Plaintiff had touched Thornton and thus lied during Bland's investigation. (Dkt. 55-7 at 51.) It was not until Doxie gave Bland "the final okay for [Plaintiff's] termination after reviewing the documentation and the video" that Bland fired Plaintiff. (Dkts. 60-1 at 53–54; 62-1 at 112.) As the Magistrate Judge concluded, a reasonable jury could not find Bland and Doxie "rush[ed] to judgment," or failed to "consider the context surrounding Plaintiff's touching of

Thornton." (Dkt. 64 at 22.)

Second, Doxie testified that determining whether physical contact violates Defendant's policies depends on the "overall circumstances," "many different variables that . . . would have to be investigated," and "the details of each individual case." (Dkt. 63-1 at 61–62, 64.) Plaintiff points to no evidence—nor does she even suggest—Defendant applied this discretion in a retaliatory manner. For example, she does not argue (or cite any evidence) that Defendant treated other employees who complained about harassment any differently in similar situations involving those employees touching a coworker in the workplace. In Plaintiff's case, Defendant investigated the particular circumstances of her touching Thornton and decided it violated company policy.

Third and finally, even if Defendant hadn't properly followed its policies in dealing with Plaintiff's conduct against Thornton, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal [retaliatory] intent" or "that the substantive reasons given by the employer for its employment decision were pretextual." *Springer v. Convergys Customer Mgmt. Grp., Inc.*, 509 F.3d 1344, 1350 (11th Cir.

2007) (internal quotation marks and citation omitted).  Instead, "[t]o establish pretext," Plaintiff "must show that the deviation from policy occurred in a [retaliatory] manner." *Rojas v. Florida*, 285 F.3d 1339, 1344 n.4 (11th Cir. 2002).  Plaintiff has not done that.  As the Magistrate Judge correctly concluded, she "has not come forward with evidence to suggest that Bland and Doxie did not honestly believe that Plaintiff" violated company policy, "much less point to any similarly situated comparators who were not discharged after touching a coworker."  (Dkt. 64 at 26.)

In arguing Defendant's "inconsistent application" of its policies serves as "circumstantial evidence of pretext," Plaintiff points to *Berg v. Fla. Dep't of Labor & Emp't Sec., Div. of Vocational Rehab*, 163 F.3d 1251 (11th Cir. 1998).  (Dkt. 67 at 15.)  In *Berg*, the plaintiff argued a state agency did not "correctly" apply its policies when it denied the plaintiff certain benefits.  *Id.* at 1255.  The court found that, even if the agency had violated its policies, the plaintiff failed to show any concrete examples of how the agency applied the policies to other people in plaintiff's position, "let alone" that the agency "applied [its policies] in an inconsistent fashion."  *Id.*  "Thus, the fact that the [agency] may have failed to follow its own policies in [the plaintiff's] case" could not "serve

as the basis for an inference of intentional discrimination." *Id.* So too here. Rather than supporting Plaintiff's position, *Berg* confirms that a mere deviation from company policy—without some other evidence that deviation was based on an illegal motive—is not evidence of pretext.

Plaintiff's argument boils down to her disagreement with Defendant's interpretation of its own policies. While under her interpretation, her touching Thornton was "inoffensive" and not a fireable offense, Defendant did not see it that way. Defendant only made that decision after it conducted an investigation involving independent evidence and multiple levels of review. So, this disagreement is not enough to create a genuine issue of material fact on pretext. *See Billingsley v. Mercedes-Benz U.S., Int'l, Inc.*, 2016 WL 5341101, at \*12 (N.D. Ala. Sept. 23, 2016) (granting summary judgment where the plaintiff "presented only her own disagreement with the way that [the defendant] exercised its 'business judgment' in interpreting its policies").

## B.    Bland's Testimony

Plaintiff says the Magistrate Judge erred by ignoring certain inconsistencies in Bland's testimony. (Dkt. 67 at 15.) She points to several pieces of evidence she contends conflict with Bland's testimony to

argue a jury could find "Bland's deposition testimony is nothing but a post hoc fabrication to disguise or coverup another motive." (Dkt. 67 at 16.) Defendant says Plaintiff merely takes issue with the quality of Bland's investigation and, because the pretext analysis is about what the employer believed at the time it made its employment decision, any purported evidence contrary to what Bland found is irrelevant to whether Defendant retaliated against her. (Dkt. 71 at 22–23.) The Court agrees with Defendant.

Plaintiff claims six pieces of evidence show Bland's testimony was "inconsisten[t]" with the other evidence sufficient to create a triable issue of fact: (1) Thornton did not report he felt threatened by Plaintiff's touching, that he didn't want it, or that he was unaware Plaintiff would touch him; (2) Plaintiff did not romantically touch Thornton; (3) Thornton did not report Plaintiff touched his chest when interviewed by Bland; (4) Bland did not show the security video to Plaintiff; (5) Bland purportedly "admitted that her statement [Plaintiff] denied touching Thornton was false and that [Plaintiff] admitted touching Thornton, but denied that any touching was romantic"; and (6) Defendant could have preserved the security video for later review but did not. (Dkt. 67 at 16.) Plaintiff does

not, however, explain how any of this supposedly contrary evidence shows Bland did not act on an honest belief Plaintiff violated Defendant's policies.

A couple of the purported "inconsistencies" Plaintiff complains about are not really inconsistencies at all. First, regarding the fact Thornton apparently never told Bland that Plaintiff's touching was unwanted or that he was unaware of it, Bland never said Thornton told her that. Rather, she testified she believed Thornton was unaware of Plaintiff's touching based on the security video, which showed Thornton looking away when Plaintiff touched his arm and chest. (Dkt. 62-1 at 100–101.) Second, Bland did not "admit" her report about Plaintiff's statement was false. Plaintiff told Bland during her follow-up interview and wrote in her second statement that while she touched Thornton's arm, she did not recall touching his chest "in a romantic way." (Dkts. 55-16 at 2; 58-3 ¶ 34.) Bland later wrote in an email that Plaintiff "denied touching . . . Thornton when follow up [interview] was completed." (Dkt. 55-15 at 2.) She added in the same email, however, that after confronting Plaintiff with the security video, Plaintiff said she "did not recall" touching Thornton's chest "and that if she did it was not in a romantic

manner." (*Id.*) So, Bland's email was not inconsistent about the sequence of what Plaintiff told her (*i.e.*, initially denying touching Thornton but then walking back her statement once confronted with video evidence but ultimately saying she did not touch him in a romantic way). And when asked at her deposition about this purported inconsistency, Bland said she "was combining when [she] spoke with [Plaintiff] about touching [Thornton's] arm and chest," and that her email meant Plaintiff "denied touching . . . Thornton in a romantic way when [the] follow-up [interview] was completed." (Dkt. 62-1 at 93.) Plaintiff admits she told Bland she touched Thornton's arm but did not "recall touching his chest in a romantic way." (Dkt. 58-3 ¶ 34.) So, even if one could read the first part of Bland's email in isolation to say Plaintiff denied touching Thornton at all, Bland explained she was referring to the fact Plaintiff denied touching Thornton's chest in a romantic way—something she explicitly wrote later in the email. This is not inconsistent with what Plaintiff said during the interview (and wrote in her statement), specifically that saying that, while she could not recall touching his chest, if she did so, it was not in a romantic way. Bland's email was not "inconsistent" with the evidence she had gathered. If anything, it supports Bland's conclusion

that *Plaintiff* provided inconsistent responses about whether she had touched Thornton.

Plaintiff's other complaints relate only to the thoroughness of Bland's investigation or the conclusions Bland reached from that investigation. For example, regardless of whether Plaintiff "romantically" touched Thornton, Bland—relying on a security video and a witness statement—decided Plaintiff touched him while he was unaware. Having found that touching inappropriate, she decided Plaintiff violated company policy. The Court already explained that— absent evidence Defendant treated anyone else in Plaintiff's shoes differently—Plaintiff cannot second-guess Bland's conclusions. Plaintiff's subjective characterization of her own conduct is irrelevant. It certainly does not make Bland's testimony inconsistent with the evidence. *See Ossmann v. Meredith Corp.*, 2022 WL 970742, at *11 (N.D. Ga. Mar. 31, 2023) (granting summary judgment after rejecting plaintiff's belief he did not violate employer's policy). Plaintiff's complaints about the security video (*i.e.*, that Bland did not show it to Plaintiff and Defendant did not preserve it) do not impugn Bland's reasoning. Plaintiff does not suggest Defendant did anything wrong in

not keeping it.  So it appears Plaintiff's real issue is with the quality of Bland's investigation.  But Plaintiff's personal views about how Bland should have conducted the investigation don't establish pretext, which "centers on the employer's beliefs, not the employee's beliefs."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010).  There is no evidence from which a jury could conclude Bland based her termination recommendation (which was approved by Doxie) upon anything other than the evidence she collected during her investigation.

### C.   Thornton's "Permission"

Plaintiff says the Magistrate Judge erred by finding Plaintiff touched Thornton "without his permission."  (Dkt. 67 at 16.)  Defendant says regardless of semantics, the Magistrate Judge properly found Bland reasonably concluded Plaintiff touched Thornton while he was unaware, which supported her decision to recommend Plaintiff's termination. (Dkt. 71 at 23.)  Defendant is right.

As the Court already explained, Bland—based on the security video and witness testimony—reasonably found that Plaintiff touched Thornton without his awareness.  After viewing the same video, Doxie agreed.  True, Bland never said she thought Plaintiff touched Thornton

without his "permission," so maybe the Magistrate Judge shouldn't have used that word. But perhaps touching someone when they don't know you are touching them is without permission. It certainly is not with permission. So maybe that is the right word. It doesn't matter in the end. Bland testified Plaintiff's conduct in touching Thornton without his knowledge was enough to violate Defendant's policies. So, the Magistrate Judge correctly concluded a reasonable jury could only find Bland and Doxie made their decision based on their belief Plaintiff inappropriately touched Thornton. *See Taite v. Monroe Cty. Pub. Libr.*, 2020 WL 550692, at *3 (S.D. Ala. Feb. 4, 2020) ("To the extent Plaintiff simply objects to word choice by the Magistrate Judge in the [R&R], ultimately the Court finds these objections have no merit and do not impact the substance of the rulings.").

## D.  Plaintiff's Cooperation

Plaintiff says the Magistrate Judge improperly found she failed to cooperate with Bland's investigation. (Dkt. 67 at 17.) Plaintiff contends evidence Bland lied about Plaintiff having denied touching Thornton during her second interview and her "rush to terminate Plaintiff before completing her investigation" could lead a jury to conclude Bland's

justification about Plaintiff's failure to cooperate was pretextual. (Dkt. 67 at 18.) Defendant says the Magistrate Judge correctly concluded there is no evidence Bland and Doxie did not believe Plaintiff "provided inconsistent responses during [Defendant's] investigation." (Dkt. 71 at 26.) The Court agrees.

Plaintiff admits that, during her first interview, she denied touching Thornton. (Dkt. 61-1 at 17 ("I told [Bland] when she asked me did I touch [Thornton] on his chest or arms 'cause that's what he told her. I told her no.").) It wasn't until two days later—when confronted with the video and witness statement—that Plaintiff "admitted touching Thornton[.]" (Dkts. 58 at 16; 61-1 at 17–18.) Based on this, Bland and Doxie believed Plaintiff had not been forthright during the first interview. Plaintiff argues—without evidence—that because Plaintiff was upset during the first interview, the fact she could not recall touching Thornton is not "tantamount to 'gross misconduct'" under Defendant's policies. She contends she never lied to Bland. (Dkt. 58-3 ¶ 40.) She insists that, during her first interview, she "honestly" reported that she did not recall touching Thornton and that, at her follow-up interview, she "honestly" reported that she recalled touching Thornton's arm but did not

recall touching his chest. (Dkt. 58-3 ¶¶ 41–42.) But that doesn't matter. What matters is that Bland believed Plaintiff lied. And because Defendant has the right to interpret its policies as it sees fit—and there is no evidence its interpretation was motivated by illegal animus—no reasonable jury could find Defendant's decision to fire Plaintiff for lying was retaliatory.

The Court already explained Bland did not lie about Plaintiff's inconsistent and evolving statements. It also already explained Bland did not rush to judgment in recommending Plaintiff's dismissal. Bland did not fire Plaintiff until she received approval from Doxie—after "all the evidence was collected." (Dkt. 62-1 at 112.)

Plaintiff presents no other evidence from which a jury could find Bland and Doxie's belief Plaintiff lied—and their reliance on that belief in firing her—was pretextual.

## E. Temporal Proximity

Plaintiff says that, while the Magistrate Judge was right to find the close temporal proximity between her complaint and termination was enough to establish a question of fact on causation, he erred in not considering it as weakening or rebutting Defendant's justification for

firing her.  (Dkt. 64 at 11.)  Defendant counters that temporal proximity alone cannot establish pretext and, lacking other evidence, Plaintiff fails to rebut Defendant's reasoning.  (Dkt. 71 at 8.)  Defendant is right.

While "temporal-proximity arguments may be enough to establish a prima facie case of retaliation, temporal proximity by itself generally cannot prove that an employer's proffered reason was pretextual."  *Todd v. Fayette Cty. Sch. Dist.*, 998 F.3d 1203, 1219 (11th Cir. 2021).  Indeed, the Eleventh Circuit has repeatedly held that temporal proximity— without more—"isn't enough to show pretext."  *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1124 (11th Cir. 2023); *see also Gogel*, 967 F.3d at 1121 n.15 ("While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient.").

After examining all the evidence discussed above, the Magistrate Judge determined none of it created a genuine issue of material fact regarding pretext.  The Court agrees.  Thus, having failed to present any other evidence that Defendant's justification for firing her was pretextual, temporal proximity alone is insufficient.

In arguing otherwise, Plaintiff says that—because Doxie told Bland

to fire Plaintiff if Bland confirmed Plaintiff "merely touched the man who assaulted her"—Defendant planned to fire her regardless of the unique circumstances of her situation.  (Dkt. 67 at 12.)  This is problematic, according to Plaintiff, because Bland and Doxie both testified that, in determining whether workplace touching is a fireable offense, Defendant looks to all the circumstances surrounding the touching.  (Dkt. 67 at 13.)  But as discussed above, Bland and Doxie *did* conduct an investigation to understanding the circumstances.  They only concluded termination was appropriate after completing that investigation and determining Plaintiff touched Thornton inappropriately and lied about it.

Plaintiff has simply failed to come forward with any evidence from which a reasonable jury could conclude Defendant's justification for firing her was pretextual.  Accordingly, her retaliation claim fails.

## IV.  Conclusion

The Court **OVERRULES** Plaintiff's Objections to the R&R (Dkt. 67), **ADOPTS** the R&R (Dkt. 64), and **GRANTS** Defendant's Motion for Summary Judgment (Dkt. 55).

**SO ORDERED** this 26th day of September, 2024.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE